IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGIA MAE THOMAS, on behalf of herself and a class, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) | 05 C 5699 |
| ) | |
| ARROW FINANCIAL SERVICES, LLC, ) ) ) | Judge Ronald A. Guzmán |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Georgia Mae Thomas has brought this class action against Arrow Financial Services ("Arrow") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILL. COMP. STAT. 505/2 *et seq.*, and the Illinois Collection Agency Act ("ICAA"), 225 ILL. COMP. STAT. 425/9 *et seq.* Before the Court is Thomas' motion for class certification and Arrow's motion to dismiss Count II of the Amended Complaint alleging violations of the ICFA. For the reasons provided herein, the Court grants in part and denies in part plaintiff's motion for class certification and denies defendant's motion to dismiss Count II.

## FACTS

Thomas alleges that on or about April 28, 2005, Arrow faxed to her employer a document that sought information beyond the scope permitted by the FDCPA in connection with its efforts to collect a Capitol One debt. (Am. Compl. ¶ 11.) In March 2005, Thomas received a letter related to her debt on Capitol One letterhead at her home address. (*Id.* ¶ 15.) She also received two letters from Arrow. (*Id.* ¶¶ 16, 19.) The first letter from Arrow contained the information that her account

had been sent to Arrow for debt collection and stated the amount owing. (*Id.*, Letter from Arrow Financial Services, LLC to Georgia Mae Thomas of 3/21/05.) The second thanked her for her promise to pay the debt and confirmed the date it was due. (*Id.*, Letter from Arrow Financial Services, LLC to Georgia Mae Thomas of 4/25/05.)

Two weeks prior to faxing the document in issue, Arrow had called Thomas at her place of employment, a part-time teaching position at a beauty college in Indiana. (Compl. ¶ 14.) When Thomas returned Arrow's telephone call, she agreed to pay a certain sum of money, requested that Arrow not call her at her place of employment again, and confirmed her home telephone number. (*Id.*) On April 28, 2005, an Arrow employee telephoned Thomas's place of employment and left a message for her. (*Id.* ¶ 22.) Thomas did not return the phone call immediately. (*Id.*) The same employee then telephoned the school, asked for the owner's name and fax number, and faxed the document in issue to Thomas's employer. (*Id.* ¶¶ 23, 24.) The document was labeled a "Verification of Employment Request Form." (*Id.*, Ex. A, Verification of Employment Request Form.) In addition to requesting the last known telephone number and address of the employee, the document sought the employee's "status" and termination date, if applicable. (*Id.*) Shortly after faxing the document, the Arrow employee called and asked if the owner of the school had received the fax. (*Id.* ¶ 25.) Upon receiving the document, the owner of the school took it to Thomas and "demanded that she handle the problem." (*Id.* ¶ 26.) Thomas alleges that Arrow did not provide her five days notice of the intention to communicate with her employer, which is required by Illinois law. (*Id.* ¶ 27.)

Thomas alleges that it is Arrow's practice to send employers of debtors documents via fax and U.S. mail seeking information that is prohibited by the FDCPA. (*Id.* ¶ 34.) Thomas further alleges that it is Arrow's practice to contact debtors' employers notwithstanding the fact that it

2

already possesses current location information. (*Id.* ¶ 44.) She claims that Arrow acquires many Capital One debts and that Capital One routinely provides to Arrow current location information of debtors. (*Id.* ¶¶ 39-42.) Thomas claims that Arrow has no legitimate purpose for obtaining "location information" on Capital One debtors or contacting their places of employment. (*Id.* ¶ 44.) She asserts that the purpose or effect of Arrow's practices is to convey information about the debt to employers and/or to intimidate debtors by informing them that a failure to pay a debt will result in the communication of information about the debt to the employer. (*Id.* ¶ 51.) Thomas alleges that the receipt of such documents by a debtor's employer harms the debtor by undermining the employment relationship. (*Id.* ¶ 52.)

Counts I, II, and III allege that Arrow violated the FDCPA, ICFA and ICAA, respectively, by sending communications to employers seeking information not limited to "location information." Counts IV, V and VI allege that Arrow violated the FDCPA, ICFA, and ICAA, respectively, by communicating with employers in connection with its efforts to collect Capital One debts where Arrow already had current location information in its possession. Counts VII, VIII and IX allege that Arrow violated the FDCPA, ICFA and ICAA, respectively, by failing to comply with state notice requirements under the ICFA and ICAA, both of which require a debt collector to provide the debtor five days notice of the intention to communicate with an employer.

## DISCUSSION

Thomas moves to certify the class and Arrow opposes the motion. Arrow moves to dismiss Count II of the Amended Complaint. The Court addresses each motion in turn.

## I. Plaintiff's Motion To Certify the Class

To certify a class under Federal Rule of Civil Procedure ("Rule") 23, the plaintiff must satisfy the four preliminary requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a); *see Heastie v. Comty. Bank of Greater Peoria*, 125 F.R.D. 669, 673 (N.D. Ill. 1989). In addition, the class action must qualify under one of the three subsections of Rule 23(b). *Id.* A failure of any of the requirements of Rule 23 results in a denial of class certification. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

Thomas seeks certification of six proposed classes. Classes I, II, and III include those individuals whose employers received a document not limited to location information in violation of the FDCPA, the ICFA and the ICAA, respectively. Classes IV, V, and VI include those individuals whose employers received a document in connection with Arrow's efforts to collect a Capital One debt, where Arrow already possessed current location information, in violation of the FDCPA, the ICFA, and the ICAA, respectively. Among the purported class members, approximately 417 individuals' employers received a document identical to that received by plaintiff's employer. (*Id.* ¶ 65.) Roughly an additional 2,278 individuals' employers received other documents, which Arrow defines as a "company-approved employment verification forms," which request similar information. (Pl.'s Mem. Supp. Mot. Class Certification 7.)

Arrow apparently concedes that numerosity, typicality, and adequacy of representation are satisfied. (*See* Def.'s Response Opp'n Pl.'s Mot. Class Certification 4-6 (addressing only commonality factor).) Accordingly, the Court focuses on whether there are questions of law or fact

4

common to the class.

Under Rule 23(a)(2), the plaintiff must show that there are questions of law or fact common to the class. FED. R. CIV. P. 23(a)(2). This requirement will be satisfied where the claims of individual class members arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Not all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class members. *Edmondson v. Simon*, 86 F.R.D. 375, 380 (N.D. Ill. 1980); *see Spencer v. Cent. States, Se. & Sw. Areas Pension Fund*, 778 F. Supp. 985, 989 n.2 (N.D. Ill. 1991).

The FDCPA prohibits a debt collector from communicating with third parties in connection with the collection of a debt without the indebted consumer's prior consent or a court's express permission. 15 U.S.C. § 1692c(a). However, a debt collector is permitted to communicate with a third party for the purpose of acquiring "location information" about the consumer. 15 U.S.C. § 1692b. "Location information" is defined as "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7). According to the Federal Trade Commission, the FDCPA prohibits a debt collector from contacting third parties under the pretense of obtaining information already in his possession. Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 50105 (Dec. 13, 1988).

The defendant objects to commonality with respect to the 2,278 individuals whose employers received a "company approved employment verification form," as distinct from the "non-company approved" form sent to the plaintiff's employer. This would exclude from the class those individuals who did not receive a document identical in all respects to the document received by the plaintiff.

5

However, commonality has been satisfied where the class members received letters that were identical or substantially similar to that received by the plaintiff. *McCabe v. Crawford & Co.*, 272 F. Supp. 2d 736, 739 (N.D. Ill. 2003); *Sledge v. Sands*, 182 F.R.D. 255, 258 (N.D. Ill. 1998).

In this case, the "company approved" and "non-company approved" documents are substantially similar so that the commonality requirement is satisfied. Each version of the document seeks the same information: verification of employee status, date of termination, and last known phone number and address. Each was sent on Arrow's letterhead. Each class member alleges that the document received by his or her employer was in violation of the FDCPA, ICFA, and ICAA. Because all of the letters are essentially identical, there are questions of law common to all claims. Therefore, the commonality requirement is satisfied. Accordingly, the Court finds that all of the Rule 23(a)(1) factors are met.

Thomas seeks to certify a class action pursuant to Rule 23(b)(3). Rule 23(b)(3) requires her to show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

Arrow argues that: (1) individual issues predominate under the FDCPA because each class member must show that the document was interpreted by his or her employer as a communication of the employee's debt and (2) individual issues predominate under the ICFA and ICAA because both Acts require proof of actual damages in a private cause of action. "If individual issues predominate, then class certification is usually not a superior method for resolving the controversy, since management of such issues will not be efficient." *Hyderi v. Wash. Mut. Bank, FA*, 235 F.R.D. 390, 406 (N.D. Ill. 2006); *see Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 511 (N.D. Ill. 2005).

First, Arrow cites *Chuway v. National Action Financial Services, Inc.*, 362 F.3d 944, 947-48 (7th Cir. 2004), for the proposition that each class member must show that the document was interpreted by his or her employer as the communication of a debt to prevail under the FDCPA. At issue in *Chuway* was whether a plaintiff suing under section 1692g(a)(1) of the FDCPA could survive summary judgment without being required to submit a survey or some other form of quantitative evidence that showed the confusing nature of the dunning letter. *Id.* at 948. The *Chuway* court held that if it is apparent from merely reading the letter and if the plaintiff testifies credibly that she was confused and represents the type of people who received the same or similar letter, "no further evidence is necessary to create a triable issue." *Id.*

In contrast to *Chuway*, this case has not reached the summary judgment stage. Further, unlike *Chuway*, where the court interpreted section 1692g(a)(1), in the instant case section 1692b governs the contents of communications sent to parties other than the indebted consumer in an effort to seek location information. 15 U.S.C. § 1692b. The Court need only decide whether Arrow's requests for location information comply with the strict limitations provided in section 1692b. *Cf. Hernandez v. Midland Credit Mgmt., Inc.*, No. 04 C 7844, 2006 WL 695451, at *4 n.7 (N.D. Ill. Mar. 14, 2006) (noting that the FDCPA regulates communications made to determine the location of a debtor separately from other prohibitions under the act). Therefore, individual issues of interpretation do not predominate with regard to Thomas' claims under the FDCPA, and thus a class action is an appropriate means of adjudicating the FDCPA.

Second, Arrow challenges certification of classes two, three, five and six alleging violations of the ICFA and ICAA by asserting that individual issues regarding each class member's damages predominate. The ICFA and ICAA require the plaintiff to show that she suffered actual damages as a result of the defendant's conduct. *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002)

7

(ICFA); *see Xydakis v. Target*, 333 F. Supp. 2d 683, 685 (N.D. Ill. 2004) (ICFA); *Greisz v. Household Bank*, 8 F. Supp. 2d 1031, 1043 (N.D. Ill. 1998) (ICFA); *McCabe*, 272 F. Supp. 2d at 736 (ICAA).

Some courts have certified class actions for alleged violations of the ICFA and ICAA. *See, e.g., Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 345 (N.D. Ill. 2001) (ICAA); *P.J.'s Concrete Pumping Serv., Inc. v. Nextel West Corp.*, 803 N.E.2d 1020, 1029-31 (Ill. App. Ct. 2004) (ICFA). The presence of individual issues will not necessarily defeat class certification where there exists a predominating question of law or fact. *P.J.'s Concrete*, 803 N.E.2d at 1030. However, where the need for highly individualized hearings to determine damages makes a class action unmanageable, the court may refuse to certify the class. *See Heastie*, 125 F.R.D. at 679 (granting motion for certification under ICFA but noting that where class action becomes unmanageable, court may decertify the class).

To support its argument that individual issues predominate in plaintiff's claims under the ICFA and ICAA, the defendant cites *Aiello v. Providian Financial Corp.*, 239 F.3d 876, 881 (7th Cir. 2001). In *Aiello*, the Seventh Circuit upheld a denial of class certification under the bankruptcy code by finding that a variance in injury among class members and the cost of individualized hearings required to assess damages rendered the case unsuitable for class treatment. *Id.*

The Court finds that the same logic applies to this case. The plaintiff claims that her actual damages are the humiliation and embarrassment resulting from her employer's receipt of the fax. This is a compensable injury. *Greisz v. Household Bank*, 8 F. Supp. 2d 1031, 1043 (N.D. Ill. 1998) (stating actual damages under ICFA include compensation for mental suffering). However, damages compensating for emotional distress are far more difficult to quantify than economic damages. *See Hyderi*, 235 F.R.D. at 401-02 (denying certification of a class suing under the Real Estate Settlement

8

Procedures Act where each class member's recovery for "mental anguish" as well as "consequential economic damages" would require individualized hearings).

Many cases illustrate the propriety of ICFA and ICAA class actions where each class member seeks readily quantifiable economic damages. *See PJ's Concrete*, 803 N.E.2d at 1023 (seeking damages for wrongfully collected municipal taxes); *Brooks v. Midas-Int'l Corp.*, 361 N.E.2d 815, 817 (Ill. App. Ct. 1997) (seeking damages for amounts paid in excess of muffler installation charge and requesting that a receiver be appointed to collect and administer the funds awarded as damages). In contrast, it is apparent in the instant case that each class member will be required to prove his or her actual damages, whether emotional or economic, and the nature and degree of each plaintiff's injury is likely to vary considerably. The plaintiff's request for an award of "general damages" to each class member and her assurance that no one will step forward to prove further "actual damages" is sheer speculation. Because the variance in injury among class members in this case will require individualized hearings to assess damages for pain and suffering, individual issues predominate in plaintiff's claims under the ICFA and ICAA.

With respect to the plaintiff's claims under the ICFA and ICAA, Arrow asserts that each class member's proof of actual damages will require individualized hearings, thereby hindering the goal of judicial efficiency and rendering a class action inappropriate. The Court agrees with this logic. Determining over 2,500 class members' actual damages under the ICFA and ICAA will transform the class action into an unmanageable proceeding dominated by individual questions. Therefore, the plaintiff has not met the requirements for class certification with respect to her claims under the ICFA and ICAA.

9

## II. Motion to Dismiss Count II

Arrow moves to dismiss Count II of the Amended Complaint,[1] in which Thomas alleges that Arrow engaged in unfair acts and practices under the ICFA. On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiffs' favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Count II of the plaintiff's complaint alleges that the defendant's practice of sending documents allegedly in violation of the FDCPA is also a violation of Section 2 of the ICFA. Section 2 prohibits "unfair methods of competition and unfair or deceptive acts or practices." 815 ILL. COMP. STAT. 505/2.

Arrow first argues that the ICFA does not apply to the plaintiff's cause of action because the ICAA is a narrower statute which specifically regulates debt collection activity and as such, the ICAA trumps or preempts the ICFA. Arrow's arguments notwithstanding, the Illinois Supreme Court has held that the same acts that are violations of the ICAA may also be violations of the ICFA. *See People ex rel. Daley v. Datacom Sys. Corp.*, 585 N.E.2d 51, 62 (Ill. 1991); *see also Bradley v. Fairbanks*, No. 02 C 7786, 2003 WL 21011801, at *4 (N.D. Ill. May 5, 2003); *Perperas v. United*

---

[1]The Court rejects Arrow's attempt to broaden the scope of its motion in its reply brief. Arrow's argument that the notice provisions of the ICFA and ICAA are in conflict with the FDCPA also will not be considered on this motion. It has no relation to Count II of the complaint, which does not allege a violation of the notice provisions. Even if the defendant's argument could be deemed related to the subject of its motion, the Court may not consider an argument that was first raised in the defendant's reply brief. "It is well-settled that raising an issue for the first time in reply is improper, as it deprives the opposing party of a meaningful chance to respond." *Griffin v. City of Chi.*, 406 F. Supp. 2d 938, 942 (N.D. Ill. 2005).

*Recovery Sys., Inc.*, No. 96 C 7693, 1997 WL 136326, at *2-3 (N.D. Ill. Mar. 19, 1997). In sum, there is no precedent holding that Arrow's conduct cannot be both a violation of the ICFA and a violation of the ICAA.

Arrow next posits that the ICFA does not apply because the fax sent to plaintiff's employer is not "trade or commerce" within the meaning of the act. This argument is without merit. In *Datacom*, the Illinois Supreme Court found that debt collection activities constitute trade or commerce and are embraced by the Act. *Datacom*, 585 N.E.2d at 65. The fact that the documents at issue in this case do not seek payment of money does not alter the court's reasoning in *Datacom*, as Arrow argues. The *Datacom* court held that debt collection activities constitute the sale and distribution of services which directly or indirectly affect the people of Illinois. *Id.* The reasoning applies equally to this case.

Arrow next argues that a violation of ICFA must be pleaded with the same particularity as that required under common law fraud. Allegations of unfair acts under the ICFA do not need to comply with Rule 9. *See Harris v. River View Ford, Inc.*, 00 C 8129, 2001 WL 1191188, at * 4 (N.D. Ill. Oct. 3, 2001); *Gaddy v. Galarza Motor Sport Ltd.*, 00 C 3893, 2000 WL 1364451, at *4 (N.D. Ill. Sept. 20, 2000). Thus, in alleging unfair practices under the ICFA, Thomas need not satisfy the heightened pleading standard of Rule 9(b).

Lastly, Arrow argues that Count II does not adequately allege that the plaintiff's injury resulted from a deceptive practice on the part of the defendant. To sufficiently plead a violation of Section 2 of the ICFA, the plaintiff must allege: "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of trade or commerce, (4) actual damage to the plaintiff, (5) proximately caused by the deception." *Oliveira*, 776 N.E.2d at 160. However, a plaintiff may recover under the ICFA for

"unfair as well as deceptive conduct." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). To determine whether conduct is unfair, a court should consider: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers. *Id.* at 961 (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). A plaintiff need not satisfy all three criteria of the test. *Id.*

Considering all facts in the light most favorable to the plaintiff, the Court finds she has adequately alleged that Arrow's practices were unfair and violated the ICFA. Plaintiff alleges that when Arrow called her at the school at which she worked, she asked Arrow not to contact her at work. (Compl. ¶ 14.) She alleges that Arrow knew her correct home telephone number and address and that she was still employed at the school, yet Arrow faxed a letter to her employer seeking to "verify" among other things, her last known address and contact information. (*Id.* ¶¶ 11-21.) Plaintiff alleges that there was no legitimate reason to verify this information and that the fax was simply meant to embarrass her, which it did. (*Id.* ¶¶ 26, 44, 80(b)(1).) Given these facts, plaintiff's complaint sufficiently puts Arrow on notice of the alleged conduct that could constitute oppressive, unscrupulous behavior so as to violate the ICFA.

## Conclusion

The Court grants plaintiff's motion for class certification with respect to Classes I and IV, which allege violations of the FDCPA and denies the motion with respect to Classes II, III, V, and VI, which allege violations of the ICFA and ICAA [doc. no. 39-1]. The Court denies defendant Arrow Financial Service's motion to dismiss Count II [doc. no. 35-1].

**SO ORDERED.**  **ENTER:**

AUG 17 2006

_____
HON. RONALD A. GUZMAN
**United States Judge**